# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Statesboro Division

| | |
|---|---|
| In the matter of: | Adversary Proceeding |
| JEFFREY DAVIS<br>(Chapter 13 Case Number 06-60150) | Number 06-6009 |
| *Debtor* | |
| JEFFREY DAVIS | |
| *Plaintiff* | |
| v. | |
| MATT GAY CHEVROLET, INC.<br>and<br>LINDA GAY | |
| *Defendants* | |

FILED
at 10 O'clock & 45 min A M
Date 2-14-07

Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia

## MEMORANDUM AND ORDER

By Memorandum and Order entered November 1, 2006, I granted the Debtor's motion for summary judgment on the issue of liability, finding that the Defendants had violated the provisions of 11 U.S.C. § 362[1] and assigned a trial to consider the nature and amount of damages. *See* Dckt. No. 26 (November 1, 2006). That trial was conducted on December 18, 2006, and I make the following Findings of Fact and Conclusions of Law.

---

[1] Hereinafter, all Section references are to Title 11 of the United States Code.

AO 72A
(Rev. 8/82)

## FINDINGS OF FACT

The Findings of Fact and Conclusions of Law in the Memorandum and Order filed on November 1, 2006, are incorporated herein by reference. In December 2004, the Defendant Matt Gay Chevrolet, Inc. (hereinafter, "MGC"), sold a 2001 Chevrolet Silverado ("Silverado") to Ruby Young, a friend and now the wife of the Debtor. The purchase and sale followed negotiations between the Debtor and MCG. During the course of those negotiations, MGC learned that the Debtor did not have a valid Georgia driver's license and advised him that under the law they could not sell him a vehicle. At that point, Ruby Young entered the negotiations and executed all relevant documents for the purchase and financing of the Silverado, which was subsequently titled in her name. Furthermore, insurance on the Silverado was obtained in her name. However, the Debtor made all of the payments out of his funds. He was the primary, if not exclusive, driver of the vehicle and took care of all the service requirements. MGC and its employees were aware of all of these facts.

The Debtor lost his job as the result of lay-offs at King Finishing, his place of employment, and he was forced to file a Chapter 13 bankruptcy case on April 21, 2006. At the time he filed his case, the Debtor was delinquent in payments to MGC, which had been working with him to help him keep the Silverado. After the filing of the case, however, due to the accrual of continuing unpaid payments, MGC had the Silverado repossessed on May 18, 2006. The Debtor informed MGC's agents performing the repossession that he was in a Chapter 13 case and that they did not have the right to take the vehicle. They responded

by threatening to call the police if the Debtor did not cooperate. In response to this threat, the Debtor "voluntarily" drove the Silverado to the premises of MGC and got a ride home with a friend. After the repossession occurred, the title owner, Ruby Young, was given the opportunity to remove her personal belongings, but the Debtor was denied the right to have access to the Silverado to remove any of his belongings, including special tires and rims that he had purchased at considerable expense and installed on the vehicle.

After the repossession, the Debtor contacted David Gay, the registered agent for and owner of MGC, and asked if he could return the Silverado's original tires and rims in exchange for the ones that he had purchased and separately financed. He was refused the right to do so. Despite demands from the Debtor's attorney, David Gay refused to return the Silverado, and this lawsuit was filed seeking turnover of the vehicle and damages for violation of the automatic stay. On May 25, 2006, this Court denied the Debtor's turnover request at an expedited hearing and left the resolution of all remaining issues for final trial. Sometime between the expedited hearing and the December trial, MGC sold the vehicle to a third party.

## CONCLUSIONS OF LAW

Section 362(k), formerly Section 362(h) prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, outlines the required circumstances and appropriate damages for a violation of the automatic stay. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by

3

this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

Once the injured individual demonstrates that the violation was "willful," he must be awarded actual damages as well as costs and attorneys' fees. To do so, the individual must demonstrate by a preponderance of the evidence that the violator had knowledge of the filing of the bankruptcy case. In re Robinson, 228 B.R. 75, 81 (Bankr. E.D.N.Y. 1998). In the present case, the evidence reveals that at the time MGC repossessed the Silverado, the Debtor informed MGC's agents that he had filed a Chapter 13 bankruptcy case. See Dckt. No. 15, Ex. A (August 14, 2006)(Debtor's affidavit). Furthermore, although the Silverado's title was not in his name, the Debtor listed "Matt Gay Chevrolet" on his Schedule D as a creditor holding a secured claim. See Dckt. No. 6 (May 4, 2006). Previously, I concluded that the Debtor had a possessory interest in the Silverado. See Dckt. No. 26 (November 1, 2006). By a preponderance of the evidence, I concluded that MGC had knowledge of the Debtor's pending bankruptcy case when it repossessed the Silverado on May 18, 2006. Therefore, its violation of the automatic stay was willful.

In finding MGC's violation to be willful, this Court is required to award actual damages to the Debtor, including his attorneys' fees and costs. See 11 U.S.C. § 362(k)(1); In re Seal, 192 B.R. 442, 456 (Bankr. W.D. Mich. 1996)("A creditor who willfully violates the automatic stay and thereby causes injury to a debtor must pay actual damages, costs and attorneys' fees and, if warranted, punitive damages."). The Debtor had a series of

jobs following the filing of his case, but after the repossession of the Silverado, he found it difficult to maintain stable employment due to a lack of reliable transportation. He seeks recovery of lost wages in the amount of approximately $4,500.00, reimbursement for the payments he made to friends for rides to work in the amount of $360.00, and damages for the loss of the rims and tires that he attached to the Silverado for which he paid $2,800.00. In addition, the Debtor seeks an award of attorneys' fees, costs, and punitive damages.

### I. Lost Wages and Loss of Use Damages

The Debtor, to his credit, was very forthright in testifying that he did not lose his job at King Finishing because of the repossession of his vehicle since he had previously been laid off due to economic cutbacks. It is clear that when he found other jobs, however, it was difficult, if not impossible, for him to reliably get to work, which impaired his ability to hold a job on a permanent basis. The Debtor testified that his loss of the use of the Silverado was the direct cause of his inability to maintain steady employment since late May 2006. *See* Dckt. No. 34 (December 18, 2006). Evidence from the trial also revealed, however, that at the time he purchased the Silverado, the Debtor did not have a valid driver's license. It had been suspended due to his failure to pay speeding tickets that he had incurred while driving in metro Atlanta, and it was not reinstated until approximately three weeks prior to trial. It is the law of Georgia that no person may *drive* a motor vehicle in this state unless that person has a valid driver's license. O.C.G.A. § 40-5-20(a) (emphasis added). However, this fact does not impact this case because the Debtor still had a possessory interest in the Silverado, which would have legally permitted him to allow another individual to use

the vehicle to transport him to and from work.

In assessing damages, I must first determine the nature of the interest taken in violation of the stay. After reviewing the authorities cited by counsel, I previously concluded that the Debtor had neither legal nor equitable title in the Silverado but merely a possessory interest. *See* Dckt. No. 26 (November 1, 2006). Although the Debtor seeks lost wages for approximately six months from the date of repossession until the date of trial, the interest that he was deprived of was only one of temporary possession. Thus, the period of time for which he can claim the loss of use is substantially less than if the Silverado's title had been in his name and not Ruby Young's. The Debtor had no title and owed MGC no money since he had not signed a promissory note. Therefore, had David Gay and MGC followed the requirements of the Bankruptcy Code and filed a motion for relief from the automatic stay, it is a foregone conclusion that stay relief would have been granted and that procedure would likely have been concluded within 45 days from the filing of the motion. As a result, I conclude that the damages stemming from the Debtor's lost wages and loss of use of the Silverado will be capped at 45 days.

In calculating the Debtor's lost wages, the Court turns to the Debtor's testimony at the December 18, 2006, hearing. The Debtor testified that after the Silverado was repossessed, he secured employment at a Wal-Mart distribution center in Statesboro, Georgia, which paid him $8.00 an hour. This amount corresponds to the Debtor's Schedule I, which indicates that through this job, the Debtor's monthly gross income was $1,300.00

with a net income of $1,001.00. Prorated over 45 days, therefore, I conclude that the Debtor's lost wages are $1,501.50. As for the Debtor's request to recoup the amounts he paid to friends and acquaintances for transportation after he lost the Silverado, since the Debtor would have been legally required to hire a driver even if he had a vehicle, these amounts are not recoverable.

## II. Debtor's Personal Property

The Debtor is entitled to damages for the tires and rims he attached to the Silverado, which the Defendants refused to return to him. Although the Debtor did not have title to the Silverado and MGC's security interest arguably extended to the attached tires and rims,[2] it is indisputable that the Debtor purchased these items with his own funds. He owned them subject to any valid security interest. MGC unlawfully took them and refused to return them without obtaining an order from this Court. To compensate him for their loss, I award the Debtor additional damages in the amount of $2,800.00, the amount he paid for them.

## III. Costs of Litigation and Attorneys' Fees

The Debtor also seeks recovery of the costs and attorneys' fees incurred in bringing this adversary proceeding. The Court admitted into evidence Debtor's Exhibit 1, which is a fee schedule compiled by the Debtor's counsel. It indicates that the Debtor met with his counsel regarding this case on June 20 (0.75 hours), August 10 (1.25 hours), August

---

[2] The Defendants raised this point in a subsequent letter brief. *See* Dckt. No. 35 (December 28, 2006).

15 (0.50 hours), and November 30 (0.75 hours). Furthermore, the Debtor traveled to Savannah to appear at the expedited hearing on May 25 (0.75 hours) and the trial on December 18 (3.00 hours). On those six days, his travel time would have been at least two hours each day in addition to the time spent with counsel or in Court. This totals 19 hours when the Debtor was required to miss work to pursue his case, and he is entitled to a reimbursement of $8.00 per hour for this time in the amount of $152.00.

Debtor's Exhibit 1 documents a claim for attorneys' fees in the amount of $12,907.40.[3] After objection by the Defendants' counsel, this amount was voluntarily reduced by approximately $250.00. However, this Court has an independent duty to review attorneys' fee applications. See In re First American Health Care of Ga., Inc., 212 B.R. 408, 413 (Bankr. S.D. Ga. 1997); In re Concrete Products, Inc., 1992 WL 12001764, *22-23 (Bankr. S.D. Ga. 1992). Reasonable fees are permitted under Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988) based on a loadstar analysis, which multiplies the prevailing market rate for attorneys of similar experience, education, and reputation in the relevant legal community by the number of hours reasonably expended to the prosecution of the case. Excessive, redundant, or otherwise unnecessary hours are excluded from this analysis and may not be compensated. Id. at 1301-02.

The first step is to determine the prevailing market rate. Lead counsel, Mr.

---

[3] In a subsequent letter brief, the Debtor's counsel sought to update Debtor's Exhibit 1 by listing fees for work at and subsequent to the December 18, 2006, trial in the amount of $1,125.00. See Dckt. No. 33 (December 22, 2006).

H. Lehman Franklin, testified that he would not take on a case of this nature for less than $275.00 per hour. However, assessing what he would personally charge a client for services does not answer the question of what the prevailing rate for similar work by lawyers of similar experience and skill would be. In the Southern District of Georgia, hourly rates range from $150.00 per hour for insurance defense to as much as $250.00 per hour for the representation of certain institutional clients. These rates may be adjusted according to the number of years of experience that an attorney has. I conclude that Mr. Franklin's services should be compensated at the higher rate of $250.00 per hour. Although she is extremely able, his associate has been practicing law for slightly over three years, would not command such a rate, and instead will be allowed at a rate of $150.00 per hour.

Applying the lodestar rates to the hours devoted to this case as represented in the Debtor's Exhibit 1, I find that the Debtor may recover attorneys' fees of $8,212.40 for the work of Mr. Franklin, Mr. Franklin's associate, and Mr. Franklin's paralegal.[4]

---

[4] In his subsequent letter brief, the Debtor's counsel admits to mistakenly noting on Debtor's Exhibit 1 a duplicate entry for May 25, 2006, which was a fee for $756.25 worth of work. In the same letter, the Debtor's counsel also admits to mistakenly charging $1,100.00 for work on July 3, 2006. As a result of these errors, the award of attorneys' fees to the Debtor are reduced as shown here:

| | |
|---|---:|
| Original Bill | $12,907.40 |
| Less amounts conceded by Mr. Franklin's subsequent letter brief | - 2,106.25 |
| Less $25.00 per hour reduction in Mr. Franklin's fee request (17.05 total hours claimed - 6.75 hour reduction = 10.3 hours X $25.00) | - $257.50 |
| Less $125.00 per hour reduction in Ms. Ward's fee request (27.65 X $125.00) | - $3,456.25 |
| Plus final fee allowance requested in subsequent letter brief (7.5 X $150.00) | + $1,125.00 |
| TOTAL | $8,212.40 |

### *IV. Punitive Damages*

The Debtor also seeks to recover punitive damages from the Defendants. Punitive damages are permitted for a willful violation of the automatic stay "in appropriate circumstances." *See* Davis v. I.R.S., 136 B.R. 414, 423 n.20 (E.D. Va. 1992)("[A]n award of actual damages is mandatory upon a finding of a willful violation, but an award of punitive damages is discretionary and proper only in appropriate circumstances."). Previously, in Bishop v. U.S. Bank/Firstar Bank, N.A. (In re Bishop), this Court determined that "appropriate circumstances" include actions taken with malicious intent to harm and actions taken in arrogant defiance of federal law. 296 B.R. 890, 898-99 (Bankr. S.D. Ga. 2003). Other courts have agreed with this standard. *See* In re Pawlowicz, 337 B.R. 640, 647 (Bankr. N.D. Ohio 2005)("The term 'appropriate circumstances' is not defined but has generally been held to require egregious misconduct on the creditor's part such as that which is taken in arrogant defiance of federal law."); Curtis v. LaSalle Nat'l Bank (In re Curtis), 322 B.R. 470, 486 (Bankr. D. Mass. 2005)("[W]here there has been an 'arrogant defiance' of the Bankruptcy Code, punitive damages are most appropriate."); In re Timbs, 178 B.R. 989, 999 (Bankr. E.D. Tenn. 1994)("Where an arrogant defiance of federal law is demonstrated, punitive damages are appropriate.")(citations and quotations omitted).

In Bishop, citing an opinion of the Bankruptcy Appellate Panel for the First Circuit, this Court listed the following factors to be considered in determining whether punitive damages are warranted: (1) The degree of reprehensibility of the violator's conduct;

(2) The ratio between the compensatory and punitive damages; and (3) The difference between the punitive damages award and the civil penalties authorized or imposed for comparable conduct. 296 B.R. at 898 (citing Varela v. Ocasio (In re Ocasio), 272 B.R. 815, 825 (1st Cir. B.A.P. 2002)). Other courts, however, have focused their analysis on the sufficiency of punitive damages to punish and deter wrongful conduct. *See, e.g.*, Henry v. Associates Home Equity Services, Inc. (In re Henry), 266 B.R. 457, 481 (Bankr. C.D. Cal. 2001)("An award of punitive damages should be determined by the gravity of the offense and set at a level sufficient to assure that it will punish and deter."); In re Riddick, 231 B.R. 265, 269 (Bankr. N.D. Ohio 1999)("[T]he primary purpose of punitive damages is to cause change in the respondent's behavior and the prospect of such change is relevant to the amount in which punitive damages ought to be granted."); In re Sumpter, 171 B.R. 835, 845 (Bankr. N.D. Ill. 1994)("Punitive damages [for willful automatic stay violations] are awarded in response to particularly egregious conduct for both punitive and deterrent purposes.").

At the expedited hearing, this Court informed the parties that while it was denying the Debtor's motion for emergency relief, it did so only on an *interim basis*. In other words, this Court made it clear to all parties that this adversary proceeding was far from over in May 2006. In addition, the Court repeatedly advised David Gay throughout the hearing to hire and consult with an attorney.[5] The Defendants' sale of the Silverado in disregard of this Court's statements and admonitions at the May 2006 hearing represents an arrogant

---

[5] A notice of appearance to serve as attorney for the Defendants was filed by Evelyn Hubbard. *See* Dckt. No. 10 (June 30, 2006).

AO 72A
(Rev. 8/82)

11

defiance of federal law. See <u>Wagner v. Ivory (In re Wagner)</u>, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987)("To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or *with reckless disregard of whether he was doing so*.")(emphasis added).

When the Defendants' actions are examined collectively, I conclude that they are sufficient to trigger an award of punitive damages under Section 362(k). In calculating such damages, I take notice of the fact that there is no evidence that the Defendants have a history of committing similar violations of the automatic stay against other customers with pending bankruptcy cases. Furthermore, as described *supra*, had MGC followed the proper procedures and filed a motion for relief at the beginning of the Debtor's bankruptcy case, it most likely would have received relief then. The Defendants knowingly repossessed a vehicle after the Debtor advised them of his bankruptcy case. Incredibly, after being served and attending the initial court hearing, they sold the vehicle in reckless or arrogant disregard for federal law. Punitive damages of $2,500.00 are awarded Coupled with the compensatory damages and attorneys' fees that the Defendants are required to pay to the Debtor, this amount of punitive damages should be sufficient to deter future conduct of this kind.

## **ORDER**

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Debtor have judgment against Defendants, Matt Gay Chevrolet, Inc., and Linda Gay, for

12

damages as follows:

| | |
|---|---:|
| Lost Wages: | $1,501.50 |
| Personal Property: | $2,800.00 |
| Claims Related to Lost Wages: | $152.00 |
| Attorneys' Fees and Costs: | $8,212.40 |
| Punitive Damages: | $2,500.00 |
| TOTAL | $15,165.90 |

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 13 day of February, 2007.